NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE YOUNG, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 10-2608 (DMC)(JAD) |
| THE WACKENHUT CORPORATION, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Plaintiff Jacqueline Young ("Plaintiff") for Summary Judgment, and upon the Motion of Defendant The Wackenhut Corporation ("TWC") for Summary Judgment. ECF Nos. 22, 23. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's Motion is **denied** and that Plaintiff's Motion is **granted**.

I. BACKGROUND

This matter involves a dispute over the termination of an employee. Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, on April 13, 2010, which TWC removed to this Court on May, 20, 2010. Plaintiff asserts a single claim for interference with rights under the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Specifically, Plaintiff alleges that TWC interfered with her rights under the FMLA

1

relating to a leave she took from June to November 2009, in connection with the birth of her child in July 2009 and childcare thereafter. Plaintiff worked for TWC for nine years before she went out on maternity leave on June 12, 2009. Beginning on October 13, 2008, Plaintiff worked as a Payroll Specialist in TWC's Cranford, NJ corporate office. Prior to taking leave for her pregnancy, Plaintiff communicated with TWC's Human Resources employee Winter Lemon regarding her pregnancy and pending leave. During her absence from work, Plaintiff continued to communicate with Winter Lemon and also Doris Wallace, who joined TWC's Human Resources Department in August 2009. Plaintiff asserts that TWC's failure to classify her leave as FMLA leave interfered with her FMLA rights by prohibiting Plaintiff from making informed decisions regarding her FMLA leave, and that Defendant's termination of her employment also violated her rights under the FMLA.

Plaintiff filed her Motion for Summary Judgment and an accompanying Brief ("Pl. SJ Br.") on June 29, 2012. (ECF No. 22). TWC filed an Opposition Brief ("TWC Opp. Br.") on August 6, 2012. (ECF No. 27). Plaintiff filed a Reply ("Pl. Rep") on August 13, 2012. (ECF No. 28).

TWC filed its own Motion for Summary Judgment and an accompanying Brief ("TWC SJ Br.") on July 2, 2012. (ECF No. 23). Plaintiff filed an Opposition Brief ("Pl. Opp. Br") on August 5, 2012. (ECF No. 26). TWC filed a Reply ("TWC Rep.") on August 13, 2012. The matter is now before this Court.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

Plaintiff asserts that she is entitled to summary judgment because TWC did not provide her with proper notice, and she was prejudiced as a result, by not being able to structure her FMLA leave time and return to work in a meaningful way and by being terminated the day after being informed by TWC's Human Resources members that she had exhausted her FMLA leave and needed to return to work. Conversely, TWC argues that Plaintiff was provided with proper notice of her rights under the FMLA, and that further, Plaintiff cannot demonstrate prejudice.

3

The FMLA protects an employee's right to family and medical leave from her job. See, 29 U.S.C. § 2612. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004); Matthews v. New Jersey Inst. Of Tech., 772 F. Supp. 2d 647, 657 (D.N.J. 2011). FMLA interference claims are derived from 29 U.S.C. § 2615(a)(1), which provides:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

An interference claim is "based on the prescriptive sections of the FMLA which create substantive rights for eligible employees." Parker v. Hahnemann Univ. Hosp., 234 F.Supp.2d 478, 484 (D.N.J. 2002) (citing Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)). The FMLA grants eligible employees the right to twelve weeks of unpaid leave per year because of a serious health condition, a need to care for a close family member with a serious health condition, or a birth of a child. See, 29 U.S.C. 2612(a)(1). After a qualified absence, employees are entitled to return to the same position or to an equivalent position. See, 29 U.S.C. 2614(a)(1).

To establish an FMLA interference claim, a Plaintiff must demonstrate the following elements: (1) she was an eligible employee under the FMLA[1]; (2) defendant was an employer

---

[1] An employee is eligible for FMLA leave if she has worked "at least 1,250 hours of service with his employer during the previous 12 month period." 29 U.S.C. § 2611(2)(A).

4

subject to the requirements of the FMLA[2]; (3) she was entitled to leave under the FMLA[3]; (4) she gave notice to defendant of her intention to take FMLA leave; and (5) defendant denied her the benefits to which she was entitled under the FMLA. See, Parker, 234 F. Supp. 2d 478, 484.

The first four elements of an interference claim are easily satisfied here, and do not seem to be disputed by the parties. First, Plaintiff was eligible for FMLA leave based on nine years of service. (Pl. SOMF ¶¶ 1-4; TWC SOMF ¶¶ 2, 13, 14, 18). Second, TWC was an employer subject to the requirements of the FMLA. (Exhibit R to McKinney Aff.). Third, Plaintiff was approved for FMLA leave. (Pl. SOMF ¶¶ 17-19; TWC SOMF ¶¶ 26-27, 31-32). Fourth, Plaintiff provided TWC with notice of her intention to take FMLA leave. (Pl. SOMF ¶¶ 6-7; TWC SOMF ¶ 21).

The fifth element of this test is in dispute here. Specifically, the parties disagree as to whether TWC provided Plaintiff with the individualized notice required by the FMLA, whether TWC actually denied Plaintiff any benefits under the FMLA to which she was entitled, and whether Plaintiff's employment was voluntarily terminated for reasons unrelated to the exercise of her FMLA rights.

With regard to the fifth element, an employer's failure to advise an employee of her FMLA rights after she properly gave notice constitutes interference with her FMLA rights to that protected leave. Conoshenti, 364 F.3d at 142-43; Parker, 234 F. Supp.2d at 483. To establish an interference claim based on failure to give notice, a plaintiff must show "impairment of [her]

---

[2] An employer covered by the FMLA must employ "50 or more employees for each working day during each of 30 or more calendar workweeks in the current or preceeding calendar year." 29 U.S.C. § 2611(4)(A)(i).

[3] The FMLA provides that childbirth and care fro a newborn baby are qualifying reasons for leave. 29 U.S.C. § 2612(a)(1).

rights and resulting prejudice." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002). Prejudice is demonstrated if the employer's failure to advise the plaintiff of her FMLA rights "rendered h[er] unable to exercise [the right to leave] in a meaningful way, thereby causing injury." Conoshenti, 364 F.3d at 143; see also, Ragsdale, 535 U.S. at 89.

### A. The Individualized Notice Required by the FMLA

Plaintiff argues that TWC failed to provide her with the type of individualized notice of her FMLA rights that is required when an employee requests FMLA leave or when an employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason. As an initial matter, Plaintiff provided notice to her employer of her pregnancy and her interest in maternity and FMLA leave. In November 2008, Plaintiff informed Defendant's former Human Resources Manager, Dale Koznicki, that she was preganant. See, Young Deposition ("Young Dep.") at 83:11-20 Ex. A to McKinney Aff.; Deposition of Winter Lemon, at 39:9-10, Ex. D to the McKinney Aff. Then on April 30, 2009, Plaintiff sent Winter Lemon an email regarding her "maternity and FMLA leave." (Pl. SOMF ¶¶ 5-16). Plaintiff also supplied Winter Lemon with leave of absence forms and a doctor's note putting her out of work. (Pl. SOMF ¶¶ 17-19). Thus, Plaintiff made clear to TWC that she was interested in taking FMLA leave and provided TWC with the necessary documentation.

It is TWC's position that an employer's inclusion of a summary of employee rights in an employee manual is sufficient to provide such "individualized notice." (TWC SJ Br. 7) (citing 29 C.F.R. 825.301(a); Gude v. Rockford Ctr. Inc., 699 F.Supp. 2d 671, 685 (D. Del. 2010)). In meeting this requirement, TWC points out that all employees had access to an employee handbook notifying employees of their FMLA rights. (TWC SJ Br. 8). This employee handbook

was available for Plaintiff to access, both in the Human Resources Office, and online via TWC's intranet.(TWC SOMF ¶ 9). TWC also posted the federal poster notifying employees of their rights under the FMLA in a location visible to all employees. (TWC SOMF ¶ 12). These actions, while also required by § 825.300, only satisfy the General Notice requirements.

Individual notice requires much more than what TWC provided to Plaintiff. 29 C.F.R. § 825.300(a) simply states the baseline, minimum amount of notice that an FMLA-covered employer must provide to all of its employees. TWC overlooks the additional requirements of § 825.300 that must also be followed when an employee requests or inquires about FMLA related leave. Further, the Gude case is also distinguishable from the present matter. Gude dealt with a plaintiff who never requested FMLA leave or gave notice of any FMLA-qualifying reasons for her absences who voluntarily resigned from her job after being warned about her periodic unexcused absences. The Gude court only noted that employers are not obligated to individually inform employees of their FMLA right if the employees do not invoke the FMLA's protection. Gude, 699 F. Supp. 2d at 671.

When an employee gives notice of FMLA related leave, the employer must provide each of the following FMLA notices:

> (1) Eligibility Notice. Once an employee notifies an employer of an FMLA qualifying medical leave, including the birth of a child, "the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days" of ascertaining that her leave may be for an FMLA-qualifying reason, absent extenuating circumstances. 29 C.F.R. 825.300(b)(1).
>
> (2) Right and Responsibilities Notice. Whenever the eligibility notice is provided, "Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R.

7

825.300(c)(1).

(3) <u>Designation Notice</u>. Within five days of when an employer has enough information to determine whether the employee's leave is FMLA qualifying, the employer must notify the employee in writing as to whether the leave will be designated and will be counted as FMLA leave. 29 C.F.R. 825.300(d)(1),(4). "If the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice." 29 C.F.R. 825.300(d)(3). Moreover, "[t]he employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. If the amount of leave is known at the time the employer designates the leave as FMLA-qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. . ." 29 C.F.R. 825.300(d)(6).

TWC concedes that Plaintiff completed the application for FMLA leave and submitted it to Ms. Lemon before she departed for work. (TWC SJ Br. 10). However, as also conceded in the depositions of TWC's Human Resources representatives, TWC did not provide Plaintiff with any of these types of required notices. TWC never gave Plaintiff an eligibility notice or a right and responsibilities notice. (Pl. SOAMF ¶¶ 20-21). Nor did TWC provide Plaintiff with a designation notice, nor did TWC properly designate Plaintiff's leave as FMLA leave. (Pl. SOAMF ¶¶ 20-33). Further, at no point during Plaintiffs leave time, did TWC tell Plaintiff that she would need to provide a doctor's note to return to work. (Pl. SOAMF ¶ 61). Nor did Winter Lemon, at any point before November 19, 2009, ever communicate to Plaintiff that she had calculated that Plaintiff would be required to return to work on November 19, 2009. (Pl. SOAMF ¶¶ 37-46). Thus, TWC did not provide Plaintiff with "individualized notice" as required by the FMLA.

### B. Prejudice Suffered By Plaintiff

Plaintiff argues that she suffered prejudice as a result of TWC's failure to properly provide her with the required information regarding her FMLA leave. Specifically, Plaintiff contends that TWC's failure to give proper notice coupled with TWC's failure to responsively answer Plaintiff's questions regarding her rights and responsibilities, prevented Plaintiff from ascertaining her return to work date and planning her leave accordingly. Ultimately, according to Plaintiff, these alleged missteps by TWC led to TWC's decision to terminate her employment.

Conversely, and in support of its own Motion for Summary Judgment, TWC contends that it did not interfere with any of the rights to which Plaintiff was entitled under the FMLA. TWC points out that Plaintiff did take off more than the twelve weeks of leave time that the FMLA requires. (TWC SOMF ¶¶ 30-31). Further, TWC argues that it informed Plaintiff on November 30, 2009, that she needed to return to work. (TWC SOMF ¶ 48). TWC characterizes the phone call that took place between Plaintiff and Winter Lemon and Doris Wallace on November 30, 2009 as a "reminder" that her leave had expired and that she needed to return to work, despite the fact that this was the first time anyone from TWC had formally informed Plaintiff of these facts. (See, TWC SJ Br. 10-11).

TWC's argument ignores the fact that the November 30, 2009 telephone call between Plaintiff and Winter Lemon and Doris Wallace was the first time Plaintiff was formally told by TWC that her FMLA leave time had been exhausted. Plaintiff reached out to TWC on multiple other occasions prior to November 30, but those phone calls and emails were not responded to by TWC. ("Pl. SOMF ¶¶ 49, 53, 62, 69, 77, 79). In the November 30, 2009 conversation, Lemon and Wallace also told Plaintiff for the first time that they needed a doctor's note in order for

9

Plaintiff to return to work. (Lemon Dep., 115:7-19). More importantly, Lemon and Wallace did not give Plaintiff a return to work day, nor did they advise Plaintiff that she had to return by a certain date or her employment would be terminated. (Lemon Dep., 114::21-115:1).

TWC ultimately terminated Plaintiff on December 1, 2009, the following day. The termination letter, drafted by Doris Wallace, stated that Plaintiff was terminated for alleged failure to provide "a return to work notification from your doctor" and "exhaust[ing] both your Federal and State leaves of absence." See, Dec. 1, 2009 Termination Letter, Ex. Q. to the McKinney Aff.; Wallace Aff. at ¶ 13.

There is ample case law in the Third Circuit, where prejudice was found in situations similar to Plaintiffs. In Conoshenti, plaintiff sought leave from work after he was hit by a car and hospitalized, and was never informed of his rights under the FMLA or given a return to work date. 364 F.3d 138. When the plaintiff returned to work after exceeding his twelve weeks of protected leave, his employment was terminated the same day due to his absences. Id. at 139. The Third Circuit held that the plaintiff could demonstrate the prejudice element of his FMLA interference claim by showing that, had he received the notice defendant was obligated to provide, "he would have been able to make an informed decision about structuring his leave and would have structured it, and his plan of recovery, in such a way as to preserve the job protection afforded by the Act." Id. at 142-143.

This case also bears similarity to Nusbaum v. C.B. Richard Ellis, Inc., 171 F. Supp. 2d 377 (D.N.J. 2001). In Nusbaum, upon learning that she needed back surgery, Plaintiff requested medical leave as well as information regarding her employer's medical leave policy. The employer refused to provide this information despite plaintiff's multiple requests. Id. at 379. The

employer did not prospectively designate Plaintiff's leave as FMLA leave or give her a return to work date. Id. at 381. Plaintiff took leave for her surgery, and was discharged during her absence for failing to file a written medical leave of absence form. Id. at 380. She then brought suit, alleging that her employer's failure to notify her of her right to twelve weeks of FMLA leave, and her subsequent termination, interfered with her FMLA right. Id. at 381. The District Court held:

> [I]t is clear that the intent of the FMLA is not just to allow employees 12 weeks of leave, but also to allow employees to make informed decisions about taking that leave. 29 U.S.C § 2619. . . . The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such opportunity, the employee has not received the statutory benefit of taking necessary leave wit the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

Id. at 385-86.

The court concluded that the plaintiff "was, therefore, not given the proper information that would have allowed her to structure her leave in a way that would have left her protected by the FMLA." Id. at 386.

The case at hand bears great similarity to Conoshenti and Nusbaum. TWC's only proffered reason for Plaintiff's termination was that Plaintiff failed to return to work after exhausting her FMLA leave. Plaintiff was terminated the day after she was first told by TWC's Human Resources members that her leave time was exhausted. Plaintiff was not afforded the opportunity to make informed decisions about her leave, based on the lack of FMLA notice provided to her by TWC. Had she been appropriately apprised of her leave time, Plaintiff could have planned and structured her leave time differently. Thus, Plaintiff did suffer prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **granted**, and

TWC's Motion for Summary Judgment is **denied**. An appropriate Order accompanies this Opinion.

                                                                   Dennis M. Cavanaugh, U.S.D.J.

Date: February __, 2013
Orig.: Clerk
cc: All Counsel of Record
      Hon. Joseph Disckson, U.S.M.J.
      File